THE PEOPLE ex rel. PATRICK McALEER, Appellant, v. STEPHEN B. FRENCH et al., Police Commissioners of New York City, Respondents.

The relator, a member of the police force of the city of New York, was dismissed from the force for intoxication. It appeared, that on October fifteenth, he was on duty until five o'clock in the afternoon, when he went home, and after moving his furniture to another house, again went on duty, and during the night came home, settled his house and went to bed. He went on duty at eight o'clock the next morning, and just before that hour, not having had any breakfast, his wife procured some brandy, which, as she alleged, fearing he would be sick, she insisted upon his drinking. After doing so, he went upon duty, and while at his post, between twelve and one o'clock, his wife, still fearing he would be sick, took him more brandy which he drank. About half past one, he went to the station-house, fell down on the floor and was found there intoxicated. It did not appear that he had been advised by any physician to take the brandy for any ailment, or that he had any physical ailment, except he testified that he was sometimes dizzy-headed. It appeared that the relator had been on the force many years and had always before been a sober and faithful officer. *Held*, that the evidence was sufficient to sustain the charge and to authorize the inference that the intoxication was voluntary and blamable; that the fact that relator's wife advised him to drink the brandy did not relieve him from responsibility; and that the exercise of discretion by the commissioners, as to the extent of the punishment, was not reviewable here.

The members of the police force of the city of New York have a permanent tenure of office and cannot be dismissed until after charges have been preferred, examined, heard and investigated, as provided by the statutes and the rules adopted by the board of police commissioners.

*It seems*, that before a police officer can be dismissed from the force for intoxication, it must be shown that the intoxication was of such a character as made it an offense against the rules; *i. e.*, that it was conscious, voluntary, blamable, and in some way due to the officer's fault.

In the absence of any proof or explanation, the mere fact of intoxication may establish the offense.

*It seems*, also, that in determining the guilt of a police officer, the police commissioners may not act upon their own knowledge, the charges must be tried and the guilt established on evidence; but in inflicting punishment, they may take into consideration both the evidence and their knowledge of the officer.

*It seems*, also, that under the provision of the Code of Civil Procedure (§ 2140) in regard to the questions to be determined upon the hearing on

the return of a certiorari, where that writ is issued to review the determination of the police commissioners, the Supreme Court may inquire not only whether there was any competent proof of all the facts necessary to be proved, in order to authorize the making of the determination, but it must look into the evidence, and if it finds that there is a preponderance of evidence against the determination of the commissioners, it has the same jurisdiction to reverse the determination it now has to set aside the verdict of a jury as against the weight of evidence.

*People ex rel. Hogan* v. *French* (*ante*, p. 493), distinguished.

(Argued February 24, 1890; decided March 11, 1890.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department made July 9, 1889, which affirmed an order of the police commissioners of the city of New York dismissing the relator from the police force.

The nature of the proceeding and the material facts are stated in the opinion.

*Edward T. Wood* for appellant. The discretion lodged in the board of police to remove an officer from the force, can only be exercised in a fair and reasonable way upon a hearing of all the facts. (Laws of 1882, chap. 410, § 272.)

*D. J. Dean* for respondents. The charge, signed by the sergeant commanding and by the surgeon, was in compliance with the rules of the department, and even if not, the objection, not having been taken at the trial, was waived. (*People ex rel.* v. *Police Comrs.*, 93 N. Y. 98.) The court below was right in affirming the determination of the police commissioners upon the merits. (*People ex rel.* v. *French*, 110 N. Y. 494.) It being discretionary with the commissioner presiding at the hearing to postpone such hearing until an opportunity has been afforded to the relator to call additional witnesses, the exercise of that discretion adversely to the relator cannot be interfered with by the court, and will not justify a reversal of the respondent's determination. (*Leggett* v. *Boyd*, 5 Wend. 376 ; *Anthony* v. *Smith*, 5 Bosw. 509; *S. M. Co.* v. *Wiggin*, 14 N. H. 441; 40 Am. Dec. 203 ; *Taylor* v. *Commonwealth*, 77 Va. 695.) The requisites of jurisdiction existed ;.

the procedure of the respondents was regular; the punishment inflicted was authorized by law, and the court cannot interfere with the exercise of the commissioners' discretion as to the amount of punishment imposed. (Laws of 1884, chap. 180; Laws of 1882, chap. 410, §§ 250, 272; *People ex rel.* v. *Fire Comrs.*, 100 N. Y. 83.).

Earl, J. The members of the police force of the city of New York have a permanent tenure of office, and they cannot be dismissed from the force for any fault or misconduct until after charges have been preferred against them and such charges have been examined, heard and investigated, as provided in the statutes and the rules adopted by the board of police commissioners. The following is one of the rules adopted by that board: "Any member of the police force may be punished by the board of police, in their discretion, either by. reprimand, forfeiture and withholding pay, not exceeding thirty days for any one offense, or by dismissal from the force on conviction of either of the following offenses, to-wit." Among the offenses specified are intoxication, neglect of duty and conduct unbecoming an officer.

We are dealing in this case with the offense of intoxication, as that was the charge made against the relator. Before a police officer can be dismissed from the force for intoxication, it must be shown that the intoxication was of such a character as to be an offense against the rules; that it was conscious, voluntary, blamable and in some way due to his fault. In the absence of any other proof, or of any explanation, the mere fact of intoxication might establish the offense, because it would have to be assumed that the officer voluntarily brought himself into that condition. But if it should appear that the officer was by force compelled to drink intoxicating liquor; or that he had taken it when it was so disguised that he did not know its character, or in good faith when it was prescribed by a physician for some bodily ailment, and that thus he became intoxicated, no blame would attach to him, he would be guilty of no offense and would in no way be in fault; and then he

could not be convicted or dismissed from the force on account of such intoxication. In *People ex rel. Masterson* v. *French* (110 N. Y. 494), we held that upon the undisputed evidence the relator was guilty of the intoxication charged, that it was voluntary, and that he was in fault, and to blame for it, that the extent of the punishment for it rested in the discretion of the police commissioners, and that the Supreme Court had no jurisdiction to interfere with their determination as to that. We, therefore, reversed the decision of the Supreme Court in this court and affirmed that of the commissioners. In the recent case of *People ex rel. Hogan* v. *French*, we held upon the undisputed facts that the intoxication was occasioned under such circumstances as to show that the relator was in no sense blamable therefor, that he had committed no offense and was not in fault and could not, therefore, properly be convicted and dismissed from the force. And, thus, while those cases are, in a certain sense, analogous, they are not alike, and are plainly distinguishable upon the grounds stated in the opinion of Finch, J., in the latter case.

Here we think there was sufficient evidence to authorize the police commissioners to find that the relator was guilty of the intoxication charged, in the sense that it was voluntary, and that he was in fault and to blame for it. It appears that on the thirteenth day of October, after being on duty until five o'clock P. M., he went home and then moved his household goods from the house where he was then living into an adjoining house, and that afterward he again went on duty and came home in the night and settled his house and went to bed. It does not appear at what hour he got up the next morning. But he was to go on duty at eight o'clock, and just before that, not having had any breakfast, his wife went to the corner grocery and got some brandy in a tumbler and brought it to him, and, fearing he would become sick, insisted upon his drinking it, which he did. He then went upon duty, and while at his post, between twelve and one o'clock, she being still afraid he would become sick, took some more brandy to him, which he then drank, and about half after one he went

to the station-house and fell down on the floor, and was found there intoxicated, and remained so for the better part of an hour. It does not appear that he had ever been advised by any physician to take brandy for any ailment, or that he had any physical ailment, except that he testified that he was sometimes dizzy-headed. Why, in the morning, did he take brandy instead of food? It would appear from the hour at which he went on duty that there was abundant time to procure food, and there does not appear to have been any necessity for his taking brandy to sustain his strength or fit him for duty. Again, instead of carrying him brandy between twelve and one o'clock, why did not his wife take him food? Or why did he not get it; and if he had no time to get it, why did he not send her for it? There seems to have been no good reason for his taking two drinks of brandy upon an empty stomach. It does not appear that he had any reason to suppose that the brandy would be good for him, or that he needed it, or that there was any exigency requiring him to take it. He took it, knowing, as we must assume, its intoxicating nature, and he took the chances of intoxication, without, so far as appears, any excuse therefor. It does not furnish him an adequate defense, that he took the brandy upon his wife's advice. He was bound to exercise his own judgment, and must stand as if he voluntarily procured the brandy himself, his wife's connection with it being simply a mitigating circumstance.

We think, therefore, this case is unlike the *Hogan Case*, and that it is more like the *Masterson Case*. Here there was evidence from which the police commissioners could justly draw the inference that the intoxication of the relator was voluntary and blamable, and, therefore, we cannot interfere with their determination, affirmed, as it has been, by the Supreme Court. The case is one which appeals strongly to our sympathy. The police commissioner who took the evidence stated that the relator's record was a good one. It appears that he had been on the force eighteen years, and had served in the same precinct nearly seventeen years, and the

sergeant in command of the precinct testified that he was an "A No. 1" officer; that he had never seen him under the influence of liquor, and that he was a faithful and good officer. A roundsman testified that he was a good officer; that he never knew him to drink anything; that he had the reputation of being a temperance man, and that he was never more surprised than when he saw him in a condition of intoxication. The relator testified that he was never in the habit of drinking; that he had been asked to drink and always refused. Taking the case as it appears to us, it was certainly a very severe punishment to dismiss the relator from the police force where he had so long and faithfully served; but the extent of the punishment rested entirely in the discretion of the commissioners, and neither the Supreme Court nor this court has any jurisdiction to interfere therewith.

We think the force and effect of the decision in the *Masterson Case* has been somewhat misapprehended. In determining the guilt of a police officer, who is on trial for charges preferred against him, the police commissioners cannot act upon their own knowledge. The charges must be tried upon evidence, and the guilt must be established by evidence produced before the commissioners upon the trial. They can neither act upon their own knowledge nor supplement the evidence by their own knowledge. But in inflicting the punishment they may take into consideration the evidence, as well as their own knowledge of the police officer, and inflict such punishment, authorized by the rules and the statutes, as in their judgment the case, in view of all the circumstances, requires. We did not determine in that case that the Supreme Court, upon certiorari, did not have jurisdiction to review the determination of the police commissioners upon the evidence, and it is a mistake to suppose that if there is any evidence in the record brought to the Supreme Court by certiorari sustaining the determination of the commissioners, that court has no right to interfere therewith. Such is the rule in this court, and such was the rule at common law. But now by section 2140 of the Code of Civil Procedure, upon the hearing on the return of a writ of certiorari, the Supreme

Court may inquire whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination; and if there was such proof, whether there was " upon all the evidence such a preponderance of proof against the existence of any of those facts that the verdict of a jury affirming the existence therof, rendered in an action in the Supreme Court, triable by a jury, would be set aside by the court as against the weight of evidence." Therefore, in all this class of cases, it is the duty of the Supreme Court not only to inquire whether there is any competent proof tending to establish the guilt of the accused officer, but it must look into the evidence, and if it finds that there is a preponderance of evidence against the determination of the commissioners, then it has the same jurisdiction to reverse the determination that it has to set aside the verdict of a jury as against the weight of evidence. It is the purpose of the law to give a review in the Supreme Court by certiorari, not only upon the law but upon the evidence, to the extent specified in the statute, and every party who seeks such a review is entitled to the fair and judicious exercise of that jurisdiction.

We do not perceive that the relator's right to call witnesses and have them sworn in his behalf upon his trial, was denied or curtailed by the police commissioner who took the evidence.

We are, therefore, constrained to affirm the order, but under the circumstances it must be without costs.

All concur but RUGER, Ch. J., and GRAY, J., who concur in result, on the ground that the case is not distinguishable from that of *People ex rel. Hogan* v. *French* (*ante*, p. 493) wherein they dissented, and O'BRIEN, J. who dissents.

Order affirmed.